**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>THE OHIO DEPARTMENT OF REHABILITATION AND CORRECTIONS,<br><br>    Defendant. | No.<br><br>COMPLAINT |

**INTRODUCTION**

Plaintiff, the United States of America, respectfully alleges:

1.    The United States brings this suit against the Ohio Department of Rehabilitation and Corrections to enforce the statutory and regulatory provisions of Title I of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12111-17, as amended, which incorporates, through 42 U.S.C. § 12117(a), the powers, remedies, and procedures set forth in Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*.

**JURISDICTION AND VENUE**

2.    This Court has jurisdiction over this action under 42 U.S.C. § 12117(a) and § 2000e-5(f), 28 U.S.C. §§ 1331 and 1345.

3.    This Court has authority to grant a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, and has authority to grant equitable relief and monetary damages pursuant to 42 U.S.C. § 12117.

4.    Venue is proper in this district under 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3) because Defendant is located in this judicial district and a substantial part of the events

and omissions giving rise to this action occurred in this judicial district.

## PARTIES

5. Plaintiff is the United States of America.

6. Defendant is the Ohio Department of Rehabilitation and Corrections (ODRC).

7. Defendant is an employer within the meaning of 42 U.S.C. § 12111(5), and a covered entity within the meaning of 42 U.S.C. § 12111(2) and 29 C.F.R. § 1630.2(b).

## FACTUAL ALLEGATIONS

8. Complainant is an individual with a disability within the meaning of 42 U.S.C. § 12102 because he has Type I diabetes, which substantially limits the operation of one or more major life activities or major bodily functions, including endocrine function. 29 C.F.R. § 1630.2(j)(3)(iii).

9. Complainant has worked for ODRC at Lorain Correctional Institution in Grafton, Ohio, (Lorain) since 1991.

10. At Lorain, the rank structure from bottom to top includes: Corrections Officer, Sergeant, Lieutenant, Captain, Major, Deputy Warden of Operations, and Warden. At Lorain, at any given time, there is only one Major, one Deputy Warden of Operations, and one Warden.

11. In 2016, Complainant was promoted to the rank of Lieutenant.

12. At Lorain, a Lieutenant may be assigned to work one of four shifts: first shift (5:30am to 3:30pm), second shift (1:30pm to 9:30pm), third shift (9:30pm to 5:30am), or an Administrative Lieutenant shift (typically 7:30am to 3:30pm).

13. Both first shift (5:30am to 3:30pm) and Administrative Lieutenant shift (typically 7:30am to 3:30pm), are "day shifts."

14. Lieutenant shifts at Lorain are assigned at the discretion of the Major in

consultation with the Warden.

15. The Major's discretion to make or change Lieutenant shift assignments at Lorain is not limited by a collective bargaining agreement or by rights based on length of time on the job (i.e., seniority rights).

16. In 2016, when Complainant was promoted to the rank of Lieutenant, he was assigned to work the second shift (1:30pm to 9:30pm).

17. Around that time, Complainant's A1C levels—the key indicator of blood sugar levels for people with Type I diabetes—began to rise dramatically, indicating that his blood sugar was less well-controlled.

18. In the later part of 2016, Complainant was hospitalized twice.

19. Shortly after Complainant's fall 2016, hospital stay, ODRC transferred him to first shift where he worked from 5:30am to 3:30pm.

20. In early 2019, the Major informed Complainant that he would be transferring him from the first shift to the second shift in July 2019.

21. Complainant discussed the proposed transfer with his medical doctor, an endocrinologist. Complainant's doctor advised him that he needed to continue working a day shift to manage his diabetes because working a later shift made it harder for him to manage his blood sugar levels, which would cause him physical harm.

22. On July 1, 2019, Complainant met with Lorain's human resources director, (HR Director), who was a member of ODRC's ADA Committee and served as the liaison between Lorain employees and the ADA Committee.

23. Complainant requested to remain on a day shift as a reasonable accommodation for his diabetes. He explained that he needed to continue working on a day shift to manage his

3

blood sugar levels and provided a letter from his treating endocrinology nurse practitioner recommending that he work days because of his diabetes.

24. When Complainant made his accommodation request, approximately 57% of the available lieutenant shifts at Lorain were day shifts.

25. During the meeting, the HR Director denied Complainant's request for a reasonable accommodation to remain on a day shift.

26. On July 22, 2019, ODRC transferred Complainant to the second shift, and he began work on that shift.

27. On August 1, 2019, Complainant made another request for a reasonable accommodation and gave completed reasonable accommodation forms to the HR Director. He included a statement and letter from his medical doctor, an endocrinologist, explaining that he needed to continue a day shift to control of his diabetes.

28. In November 2019, ODRC sent a letter to Complainant's endocrinologist with a list of questions regarding Complainant's reasonable accommodation request.

29. Among those questions, ODRC asked the following: "[Complainant] has worked second shift in the past without issue. If that environment is not stable, how is that possible?" Complainant's endocrinology nurse practitioner answered, "He can work 2nd shift, but his condition is harder to manage on that shift based on his circadian clock. It has been, currently is, and will in the future do damage to him physically. The damage would manifest in unstable blood-sugar levels."

30. ODRC also asked, "What will happen if he has continued unstable blood sugar-levels?" Complainant's endocrinology nurse practitioner answered, "The unstable levels could result in increased seizures, kidney disease, and vision problems to name a few."

31. During the fall of 2019, the HR Director met with the Major and the Warden, to discuss Complainant's request for a day shift. Complainant was not included in the meeting.

32. The HR Director considered the Major, who was in charge of shift assignments, to be the "subject matter expert" on shift assignments.

33. The HR Director did not inform the Major that Complainant was requesting day shift as a reasonable accommodation for a disability, nor did he explain to the Major that ODRC had certain obligations under the ADA.

34. At that fall 2019 meeting, the Major told the HR Director that Complainant's shift request "could not operationally happen."

35. Neither the Major, nor any other of Complainant's commanding officers, met with Complainant to discuss his reasonable accommodation request.

36. In December 2019, five months after the HR Director verbally denied Complainant's request, ODRC denied the accommodation request in writing, stating that his request was not "a reasonable accommodation."

37. Assigning Complainant to work on a day shift is a reasonable accommodation that would not cause an undue hardship for ODRC.

38. ODRC's actions caused Complainant emotional distress and physical harm.

39. On August 30, 2019, Complainant filed a timely charge of discrimination with the Equal Employment Opportunity Commission (EEOC), alleging that ODRC had discriminated against him in violation of the ADA by failing to provide a reasonable accommodation of a transfer to day shift.

40. Pursuant to 42 U.S.C. § 2000e-5, incorporated by reference in 42 U.S.C. § 12117(a), the EEOC investigated Complainant's charge and found reasonable cause to

conclude that he was discriminated against on the basis of disability.

41. After the EEOC's conciliation efforts failed, the EEOC referred the matter to the United States Department of Justice.

42. All conditions precedent to the filing of this suit have occurred.

## CAUSE OF ACTION
## Violation of Title I of the Americans with Disabilities Act

43. The foregoing paragraphs are incorporated.

44. Under the ADA, "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (2018); *see also* 29 C.F.R. § 1630.4 (2019).

45. Complainant is a qualified individual with a disability who can perform the essential functions of the Lieutenant position with or without a reasonable accommodation. *See* 42 U.S.C. § 12111(8).

46. An employer discriminates on the basis of disability when it fails to make reasonable accommodations to an otherwise qualified individual's known physical or mental limitations, unless the employer "can demonstrate that the accommodation would impose an undue hardship on the operation of the business . . . ." 42 U.S.C. § 12112(b)(5)(A); 29 C.F.R. § 1630.9(a).

47. ODRC discriminated against Complainant on the basis of disability in violation of the ADA by failing to make reasonable accommodations to his known physical or mental limitations. 42 U.S.C. § 12112(b)(5)(A); 29 C.F.R. § 1630.9(a).

48. Complainant was harmed by ODRC's actions and its failure to comply with the ADA.

**PRAYER FOR RELIEF**

WHEREFORE, the United States prays that this Court:

49. Grant judgment in favor of the United States and declare that Defendant has violated Title I of the ADA, 42 U.S.C. §§ 12111-12117, and its implementing regulation;

50. Enjoin Defendant and its agencies, agents, employees, successors and all persons in active concert or participation with it, from engaging in discriminatory employment policies and practices that violate Title I of the ADA;

51. Require Defendant to modify its policies, practices, and procedures as necessary to bring its employment practices into compliance with Title I of the ADA;

52. Require Defendant to allow Complainant to work a day shift as a reasonable accommodation.

53. Award Complainant compensatory damages as a result of Defendant's failure to comply with the requirements of Title I of the ADA pursuant to 42 U.S.C. § 1981a; and

54. Order such other appropriate relief as the interests of justice require.

Respectfully submitted,

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

*/s/ Alyse Bass*
REBECCA B. BOND
Chief
KEVIN KIJEWSKI
Deputy Chief
ALYSE BASS
Senior Trial Attorney
Disability Rights Section
Civil Rights Division

                150 M Street NE
                Washington, D.C. 20530
                Telephone: (202) 616-9511
                Email: Alyse.Bass@usdoj.gov

U.S. Department of Justice